NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

_____
In re:                                                          :    Bankruptcy Case No. 03-50135
                                                                :
PETER E. GUNN                                         :    Chapter 7
                                                                :
            Debtor.                                          :
_____:
                                                                :
PETER E. GUNN                                         :
                                                                :
            Plaintiff                                          :
                                                                :
vs.                                                              :
                                                                :    Adversary No. 04-2526
EDUCATIONAL CREDIT MANAGEMENT   :
CORPORATION                                         :
                                                                :    **MEMORANDUM OPINION**
            Defendant                                       :    Trial Date: 4/7/2005 & 5/16/2005
_____:

**APPEARANCES**

For Plaintiff/Debtor, Peter E. Gunn

Jeffrey B. Saper, Esquire
600 North Route 73, Suite 8A
Marlton, New Jersey 08053

For Defendant, Educational Credit Management Corporation

Kenneth L. Baum, Esquire
Cole, Schotz, Meisel, Forman & Leonard, P.A.
25 Main Street
PO Box 800
Hackensack, New Jersey 07602-0800

The Honorable Kathryn C. Ferguson, USBJ

On August 31, 2004, the Debtor filed a one count complaint captioned "Adversary Complaint for Hardship Discharge of Student Loans Pursuant to 11 U.S.C. § 523(a)(8)". The trial commenced on April 7, 2005 and concluded on May 16, 2005. In June, the parties filed written closing statements. The court reserved decision. The following are the court's proposed findings of fact and conclusions of law.

**Factual Findings**

Peter E. Gunn filed a voluntary Chapter 13 petition on December 11, 2002, which was converted to Chapter 7 on July 22, 2004. The Chapter 7 Trustee issued a Report of No Distribution on October 11, 2004. The Debtor received his discharge on October 26, 2004.

Mr. Gunn received an Associates Degree in criminal justice in 1981; a Bachelor of Applied Arts and Sciences degree in criminal justice in 1982; and a J.D. from Widener University School of law in 1991. To finance his law school education, Mr. Gunn took out seven loans from August 1988 to June 1990. In 1993, he consolidated them into one loan. The original principal balance of his consolidated loan, including capitalized interest, was $72,012.00. (Ex. D5). The original lender was New Jersey State Higher Education Assistance Authority and the guarantor was Pennsylvania Higher Education Assistance Agency (PHEAA). (Ex. D4). On July 26, 2004, PHEAA assigned its rights, title, and interest in the consolidated loan to the Educational Credit Management Corporation (ECMC). (Ex. D3). Mr. Gunn's total student loan obligation to ECMC as of September 9, 2004, was $75,838.25, consisting of the original principle balance and unpaid interest of $3,826.63, plus interest accruing at the rate of $17.76 per day. (Ex. D4).

After graduating from law school, Mr. Gunn clerked for a Superior Court Judge and then joined

a law firm, where he later became a partner. After the dissolution of that firm, Mr. Gunn worked as a solo practitioner until approximately November 2002. Although he is still a licensed attorney, he has been virtually inactive in the profession since that time. Mr. Gunn made regular payments on his loan until about 2002, when he stopped working and could no longer afford the payments. Tr. Transcr. 51: 11 - 25 (April 7, 2005).

For an extended period of time, Mr. Gunn has suffered from a psychological disorder that has prevented him from practicing law. During this period, he has been under the care of Dr. Robert DeMercurio. Although Mr. Gunn is optimistic about his chances of returning to work, that optimism is not shared by his psychiatrist. Dr. DeMercurio testified that the Debtor is currently not able to practice law, and there is no reasonable expectation that he will be able to practice law in the foreseeable future. Tr. Transcr. 157: 5 - 9 (April 7, 2005). Additionally, Dr. DeMercurio opined that there is no reasonable expectation that the Debtor would be able to maintain any job that can provide for his support. Tr. Transcr, 110: 7 - 16 (April 7, 2005).

Mr. Gunn has been separated from his wife since April, 2004, and although there is no divorce complaint pending, there is no reasonable prospect of reconciliation. Pursuant to a Property Settlement agreement between Mr. Gunn and his wife, and approved by the Superior Court of New Jersey, their former residence/business office at 411 High St. has been sold. Mr. Gunn received 40% of the proceeds, which amounted to $29,425, and his wife received 60%. Tr. Transcr. 18: 3-6 (Apr. 7, 2005). Currently, Mr. Gunn lives off his share of the proceeds from the sale of 411 High Street. He has approximately $16,500 remaining. Once this fund is depleted, Mr. Gunn will have nothing left with which to pay his

3

expenses. Tr. Transcr. 66: 16-20 (May 16, 2005).

The Property Settlement Agreement also provided for Mr. Gunn to sell his interest, worth approximately $26,000, in the couple's second home, at 56 Pine St., to his wife. Ms. Gunn was to pay Mr. Gun $750 per month until the balance was paid in full. Tr. Transcr. 21: 18-25 (Apr. 7, 2005). However, since Mr. Gunn was behind in his child support payments and would not be able to pay in the future, he relinquished his $26,000 interest in the house at 56 Pine in lieu of all past and future child support payments. Tr. Transcr. 71: 4-25 (May 16, 2005)

Mr. Gunn received $5,000 from a 2004 personal injury settlement, and used it to purchase a vehicle and insurance on the vehicle. Tr. Transcr. 27: 2-17 (Apr. 7, 2005). Mr. Gunn had a substantial collections business when he practiced law, but after becoming incapacitated transferred his collections files to a friend. That attorney no longer actively pursues collection on the remaining files and it is not anticipated that they will ever yield significant income to Mr. Gunn. Tr. Transcr. 25: 5-16 (Apr. 7, 2005). Mr. Gunn currently rents a room at 235 Center Street, Morristown, NJ for $85.00 per week. Tr. Transcr. 17: 18-25 (Apr. 7, 2005).

**Legal Analysis**

The legal question before this court is whether the Debtor's Chapter 7 discharge included the debt he owed to ECMC on account of his educational loans. Typically, such loans are not dischargeable in bankruptcy; however, there is an exception if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents ...." 11 U.S.C. § 523(a)(8). The Bankruptcy Code does not define the term "undue hardship," leaving that to judicial development. The Third Circuit Court

of Appeals has adopted the definition of "undue hardship" first promulgated in Brunner v. New York State Higher Educ. Services Corp. (In re Brunner), 831 F.2d 395 (2d Cir. 1987). Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298 (3d Cir. 1995). In Brunner, the Second Circuit Court of Appeals held that an individual satisfies the undue hardship requirement of § 523(a)(8) if:

> 1) The debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
> 2) Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> 3) The debtor has made good faith efforts to repay the loans.

Brunner at 396. The Third Circuit adopted the Brunner test as the most consistent with the policies underlying the Code because it did not require a debtor to live in abject poverty in order for a student loan to be dischargeable. Faish, 72 F.3d at 305.

The debtor has the burden of establishing all three Brunner elements. Id. at 306. To advance the fresh start policy underlying the Bankruptcy Code, courts should construe discharge exceptions in favor of the debtor. In re Pelkowski, 990 F.2d 737 (3d Cir. 1993).

The first prong of the undue hardship test requires a debtor to prove that based on her income and expenses, she could not afford to maintain a minimal standard of living if forced to repay the loans. Faish at 306. As the Third Circuit noted in Faish, '[t]he first prong of the Brunner analysis requires more than a showing of tight finances." Id. If the loan can be paid by "short-term, belt tightening" then the first prong is not satisfied. Id. at 307.

The Third Circuit has not defined what a "minimal standard" of living is, but several courts have held that it does not mean Debtor has to live in poverty. *See*, Ammirati v. Nellie Mae, Inc. (In re Ammirati),

5

187 B.R. 902, 906 (D.S.C. 1995)(debtor should not be forced to sell his house to lower his expenses); Nary v. The Complete Source (In re Nary), 253 B.R. 752, 763 (Bankr. N.D. Tex. 2000); Hoyle v. Pennsylvania Higher Educ. Assistance Agency, 199 B.R. 518, 523 (Bankr. E.D. Pa. 1996). Based on the standards derived from these cases, it is clear that Mr. Gunn's standard of living is "minimal". He is unemployed and his sole source of income is his dwindling share of the proceeds from the sale of the marital home. Tr. Transcr. 66: 16-24 (May 16, 2005). To stretch the money, Mr. Gunn rents a room from a friend. His lifestyle can aptly be described as frugal; he does not dine out or spend money on clothing or entertainment. He incurs some expenses associated with his dog, but nothing that could be regarded as excessive. His only source of transportation is a motorcycle. This is not a situation where a little "belt tightening" would enable him to repay his student loans. Faish at 307.

ECMC argued that Mr. Gunn would be eligible for the William D. Ford Direct Loan Program pursuant to 34 C.F.R. § 685.216. Under the Ford Program, Mr. Gunn's loan payments could be between $930 and $521 a month depending on the program he chose. ECMC further argued that under the Income Contingent Repayment Program ("ICRP"), his payments could be $50.33 a month for the first year of a 300 month repayment plan. Presumably, the payments would increase after the first year. ECMC also indicated that since Mr. Gunn was unemployed, his payments under the ICRP could be as little as $5 per month. ECMC asserted that the availability of this program ensured that Mr. Gunn would not suffer undue hardship if the court denied the discharge.

Several courts have rejected such arguments and discharged student loans even in situations where the debtor's repayment was minimal or zero. *See,* In re Cheney, 280 B.R. 648, 664-66 (N.D. Iowa

2002)("the William D. Ford Program is no silver bullet for student loan creditors to avoid discharge of student loan debts owing to undue hardship"); In re Fahrer, 308 B.R. 27, 35 (Bankr. W.D. Mo. 2004). If eligibility for the Ford Program automatically negated a finding of undue hardship, then institutions such as ECMC could trump the courts they would be making decisions regarding dischargeability of loans. In re Limkemann, 314 B.R. 190, 196 (Bankr. N.D. Iowa 2004). The court in Limkemann noted that the danger of forcing a debtor whose non- student loans have been discharged into a program such as the ICRP was significant. It noted that programs like the ICRP offer repayment amounts that are so low that the payments have very little or no effect in reducing the loan principal. Id. at 196. As a result, interest is accrued for the full term of the loan, which may be up to twenty five years. Id. The Court also noted that in the event the loan is eventually forgiven, such forgiveness could be taxable, and the tax liability would likely be non-dischargeable in bankruptcy. Id.

That is significant because Mr. Gunn has no current source of income and his prospect for future employment or improvement is slight. Tr. Transcr. 160: 11-14 (Apr. 7, 2005). According to Dr. DeMercurio, it is unlikely that Mr. Gunn will ever be in a position to significantly improve his financial status enough to make meaningful payments toward his loan balance. Tr. Transcr. 160: 15-24 (Apr. 7, 2005). As such, Mr. Gunn would be indebted to ECMC for his entire life. As noted in Limkemann, if ECMC should forgive Mr. Gunns's debt at a future time, then he would be indebted to the IRS. Either option would ensure that Mr. Gunn will remain in poverty for the rest of his life. The psychological effects of these two options are particularly significant for someone who is already under treatment for a psychological illness. Therefore, the availability of the Ford Program cannot overcome the fact that he would fall below the minimum standard of living if forced to repay the loan. Mr. Gunn meets the first prong of the undue

7

hardship test.

The second prong of the Brunner undue hardship test requires the debtor to prove that the inability to maintain a minimal standard of living will continue for a significant portion of the loan repayment period. Brunner, 831 F.2d at 396. In Faish, the Third Circuit did not interpret the last two prongs of the Brunner undue hardship test because the debtor failed to satisfy the first prong. Faish, 72 F.3d at 306 (if any of the elements of the test are not met, the inquiry ends and the loans cannot be discharged). The Third Circuit later had an opportunity to address the second Brunner prong and noted that it "is a demanding requirement". In re Brightful, 267 F.3d 324, 328 (3d Cir. 2001). It is not enough for a debtor to prove that he has no current capacity to pay his debt; it must be established that this incapacity will continue into the future, for reasons outside the debtor's control. Brightful at 328.

In Brightful, the court found it significant that the debtor was currently employed as a legal secretary. The court found that Ms. Brightful had failed to produce evidence to demonstrate how her psychological problems limited her ability to work now or in the future. Brightful at 330. Unlike Brightful, where the debtor was gainfully employed at a job that matched her skills, Mr. Gunn is unemployed and unable to utilize his skills in any meaningful manner. Tr. Transcr. 157: 5-9 (Apr. 7, 2005). Mr. Gunn has presented convincing evidence that absent a major breakthrough he will be unable to work in his chosen field or any occupation that would provide sufficient support. Tr. Transcr. 160: 11-14 (Apr. 7, 2005). Numerous courts have found that psychological problems should be included in the additional circumstances likely to persist for a significant portion of the repayment period of the student loan. *See,*

*e.g.*, Credit Mgmt. Corp. v Polleys, 356 F.3d 1302, 1310-11 (10th Cir. 2004); Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 143- 44 (Bankr. D. Vt. 2001); Oswalt v. University at Buffalo (In re Oswalt), 215 B.R. 337, 340-41 (Bankr. W.D.N.Y. 1997).

The evidence adduced in this case demonstrates that Mr. Gunn struggles with serious psychological issues. He has been treated at a mental health facility and continues to receive pharmacologic and therapeutic treatments from his psychiatrist. Tr. Transcr. 103: 13-25 (Apr. 7, 2005); Tr. Transcr. 127: 17-25 (Apr. 7, 2005). Despite these treatments, he continues to show no signs of improvement. Tr. Transcr. 162: 4-14 (Apr. 7, 2005). Mr. Gunn's testimony also reflected his doctor's opinion that he was unable to work, and in all likelihood, would be unable to work in the predictable future. Tr. Transcr. 110: 7-16 (Apr. 7, 2005). Mr. Gunn has met his burden and proven that his psychological problems constitute "additional circumstances" that are likely to persist into the foreseeable future. Therefore, Mr. Gunn has satisfied the second prong of the Brunner test and has demonstrated that his current condition is probably not going to improve for a significant portion of the repayment period of his student loans.

The third prong of the Brunner test requires the debtor to prove that he has made good faith efforts to repay the loans. Faish at 306. This prong has recently been addressed by two bankruptcy courts in New Jersey. In In re Rivera, 284 B.R. 88 (Bankr. D.N.J. 2002), the court found good faith where the debtor had paid for the first year of a ten-year repayment plan, but stopped when psychological problems prevented him from keeping his job. Courts have also found good faith where the debtor's financial condition was caused by factors beyond the debtor's control. In In re Williams, 296 B.R. 128 (Bankr. D.N.J. 2003), the court found good faith even though the debtor did not make a single payment on student loans because of her grave medical condition. In a non-precedential decision, the Third Circuit has stated

9

that it agrees with the approach taken by other courts of appeals that the good faith analysis must consider: "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy." Pelliccia v. United States Dep't of Education, 67 Fed. Appx. 88, 91 (3d Cir. 2003).

Mr. Gunn started making payments on his loans soon after graduating from law school in 1991. In 1993, he consolidated all the loans with the Pennsylvania Higher Education Assistance Agency (PHEAA). (Ex. D4). Mr. Gunn made regular payments on the consolidated loan until approximately 2001, when he could no longer afford to do so.[1] . Tr. Transcr. 51:1- 9 (Apr. 7, 2005). Compared with the debtor in Rivera, Mr. Gunn had made his payments for a longer period of time and had repaid a more substantial portion of the original loan amount. Mr. Gunn also tried to learn new job skills in order to get back into the work force in a less stressful career, but his psychological condition prevented him from completing the training programs he enrolled in, and from obtaining employment. Tr. Transcr. 61:1- 25 (Apr. 7, 2005). Mr. Gunn is also taking active steps to try to deal with his psychological problems and bring them under control. Based on the totality of the circumstances, the court finds that Mr. Gunn made a good faith effort to repay his loans before

---

[1] Mr. Gunn testified that he repaid approximately $63,000 on his student loans, but neither he nor ECMC provided documents to prove or disprove this claim. Tr. Transcr. 51 - 52 (Apr. 7, 2005). Debtor's counsel's closing statement asserts the total payments are closer to $75,000.

seeking bankruptcy protection.  Tr. Transcr. 161:17-20, 60: 22-25, 61: 1-25 (Apr. 7, 2005).

Therefore, the court finds Mr. Gunn has satisfied the third prong of the undue hardship test.

## **CONCLUSION**

The Debtor has satisfied his burden of establishing all three prongs of the <u>Brunner</u> undue hardship test.  Therefore, his educational loans are subject to discharge pursuant to 11 U.S.C. § 523(a)(8).  Debtor's counsel should submit a form of order in accordance with this opinion.

_____
KATHRYN C. FERGUSON, USBJ
US Bankruptcy Court

Dated: September 16, 2005